UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

RELIANCE STANDARD
LIFE INSURANCE COMPANY,

         Plaintiff,

         v.                                  Case No. 05-C-0788

ROBERTA A. MATULA, PP, PLS,
THE EUGENE J. MATULA LIVING TRUST,
RENEE M. SCHMELING,
SCOTT A. MATULA,
TODD E. MATULA,
JILL MARIE MATULA,

         Defendants.

---

## DECISION AND ORDER FINDING THAT SUBJECT MATTER JURISDICTION EXISTS AND GRANTING MOTION TO DEPOSIT AND DISCHARGE

Reliance Standard Life Insurance Company, wanting to pay $10,000 pursuant to a life insurance policy but not knowing whom to pay, filed an interpleader complaint in the Western District of Wisconsin. The Western District court found venue to be improper and transferred the case to this district, where proper venue exists. Reliance then filed what is often, in interpleader cases, a simple motion asking for permission to deposit insurance proceeds with the clerk of court and seeking discharge from the rest of the case.

However, in this instance, the motion generated numerous briefs on the issue of subject matter jurisdiction. Although no formal motion to dismiss based on lack of subject matter jurisdiction was ever filed, three of the defendants raised the issue at a scheduling conference and all parties present at the conference acknowledged that the subject matter jurisdiction issue should be addressed before any money is deposited with

the clerk of this court. Further, a federal court must police its subject matter jurisdiction. *Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 1476 (2006). Thus, the court will address the issue, then, if warranted, turn to Reliance's motion for deposit and discharge.

BACKGROUND

As alleged in the interpleader complaint or apparent from its exhibits, plaintiff Reliance Standard Life Insurance Company issued a Voluntary Term Life Insurance Agreement (the Agreement) to the law firm of Michael, Best and Friedrich, LLP (MBF), participant number VG177099, for the benefit of MBF's employees, including defendant Roberta Matula. (Compl. ¶ 10, Ex. A.) As part of her benefits, Roberta was entitled to maintain coverage for herself and her former husband, Eugene Jon Matula. (Compl. ¶ 11.)

Roberta and Eugene Matula married on May 21, 2001. (Compl. Ex. F at 2.) No children were born to or adopted during the marriage. (*Id.*) While employed by MBF and during this marriage, Roberta obtained life insurance coverage for Eugene pursuant to MBF's policy with Reliance. (*See* Compl. ¶¶ 11, 17, 30.) On May 1, 2003, Roberta and Eugene were granted a divorce in Milwaukee County Circuit Court. (Compl. Ex. F at 1.) The Judgment of Divorce, which incorporates a marital settlement agreement and property division, does not list the policy among the assets to be distributed. (Compl. Ex. F, Ex. A.)

Notwithstanding the divorce, MBF continued to deduct premium amounts from Roberta's paychecks and paid the premiums on Eugene's life insurance policy. (*See* Compl. ¶ 30.) Eugene died on March 15, 2004. (Compl. ¶ 12, Ex. B.) At the time of Eugene's death, the Reliance policy on him was still in effect. (*See* Compl. *passim*.)

2

Following Eugene's death, MBF advised Reliance that Roberta had been designated as the policy's beneficiary. (*See* Compl. ¶ 23, Ex. H.) But Reliance also received proof of loss claim statements from four of Eugene's children from prior marriages: defendants Renee Schmeling, Scott Matula, Todd Matula and Jill Marie Matula. (Compl. ¶¶ 13, 22, Ex. C.) Their attorney asserted that under Wisconsin law Roberta is precluded from receiving the policy proceeds. (Compl. ¶¶ 21, 24, 32, Exs. G, I, M.)

Reliance investigated and also obtained a copy of Eugene's purported Last Will and Testament, executed on September 27, 2002, which provided that all of his assets were to be distributed to the Eugene J. Matula Living Trust. (Compl. ¶¶ 14-15, Ex. D.) Further, Reliance received a document titled "Retitle Assets/Change of Beneficiary Designation" dated September 27, 2002, signed by Eugene and indicating that The Eugene J. Matula Family Trust was being named as the primary beneficiary under the Reliance policy. (Compl. ¶¶ 16-17, Ex. E.) The trustee of The Eugene J. Matula Living Trust wrote to Reliance objecting to any distribution of policy proceeds to Roberta.[1] (Compl. ¶¶ 25-26, Ex. J.) Meanwhile, Roberta reaffirmed her claim to the policy proceeds. (Compl. ¶¶ 29-31, Ex. L.)

On May 12, 2004, Reliance wrote to interested parties urging them to resolve their claims. Reliance indicated that if the issue was not resolved, it would file an interpleader action. (Compl. ¶ 33, Ex. N.) Later correspondence indicated that the parties had not resolved who would receive the policy proceeds. (Compl. ¶¶ 34-38, 40.)

---

[1]No one contends that The Eugene J. Matula Living Trust named in the will differs from The Eugene J. Matula Family Trust named in the change of beneficiary form. From here on, the court refers to them as the same trust.

Reliance has always acknowledged that benefits under the policy totaling $10,000 are due and payable. (Compl. ¶¶ 39, 41, 44.) Moreover, it asserts that it is an innocent entity faced with multiple and conflicting claims of entitlement to the $10,000 policy proceeds. (Compl. ¶ 46.)

Reliance filed the interpleader complaint on September 14, 2004, against Roberta, the four children, and the trust. (Compl. at 1.) Three of the children, Renee Schmeling, Scott Matula, and Jill Marie Matula (together the "Schmeling defendants") and Roberta filed answers to the interpleader complaint. Defendant Todd Matula failed to file an answer and the clerk of the Western District of Wisconsin entered default against him on May 18, 2005. The defendant trust failed to file an answer also. The Schmeling defendants twice sought entry of default against the trust, but the Western District clerk declined each time. To date, the trust has not filed an answer or otherwise appeared in this case. Thus, the interest of the trust in this matter remains in limbo.

Reliance moved to deposit the $10,000 insurance proceeds with the clerk of court. When it filed its motion, it was willing to deposit the full $10,000, with no reduction for any of its attorneys fees. At a scheduling conference, Roberta indicated that she agreed with such a deposit, but the Schmeling defendants objected, citing concerns regarding subject matter jurisdiction. Consequently, the court allowed these defendants to file an objection to the motion for deposit and discharge and, within sixty days after the conference, an additional brief regarding subject matter jurisdiction.

Further, the court noted that the clerk of court could charge a fee for such a deposit, which would reduce the $10,000, and suggested that the parties look into other

4

arrangements which might conserve as much of the proceeds as possible or even earn

interest. To date, the parties have not informed the court of any alternate arrangements.

To date, the Schmeling defendants have filed five separate briefs, totaling

ninety-six pages; Roberta has filed a brief on subject matter jurisdiction; and Reliance has

filed a reply brief regarding its motion to deposit and discharge as well as a brief

responding to the Schmeling defendants' subject matter jurisdiction arguments.

Notwithstanding the excessive briefing, the court has considered all of these submissions.[2]

SUBJECT MATTER JURISDICTION

Perhaps because no motion to dismiss was filed (such motions require the

movant to specify the applicable rule) the discussion of subject matter jurisdiction begins

with confusion on what documents can be considered.

In its complaint, Reliance references federal question jurisdiction under 28

U.S.C. § 1331, and part of the Employee Retirement Income Security Act (ERISA), 29

---

[2]Pursuant to Civil L.R. 7.1, a motion is supported by a brief, the opposing party gets a response brief, and the movant gets a reply brief. Here, Reliance filed its motion for deposit and discharge, the Schmeling defendants filed their response brief (titled as a "Response with Objections"), and Reliance filed its reply brief. However, the Schmeling defendants then filed a surreply brief, which is generally not permitted. Later, the Schmeling defendants and Roberta filed essentially simultaneous briefs on subject matter jurisdiction. Reliance responded to the brief of the Schmeling defendants, while the Schmeling defendants responded to Roberta's brief. The Schmeling defendants then replied to Reliance's response. In hindsight, the briefing schedule for the subject matter jurisdiction should have been better clarified by the court. Not counting the original motion for deposit and discharge, the subject matter jurisdiction issue generated 128 pages of briefing, far more than what would have been allowed under Civil L.R. 7.1 had the Schmeling defendants filed a regular motion to dismiss (thirty pages for the initial brief, thirty pages for the response brief, and fifteen pages for the reply brief, for a total of seventy-five pages) and either indicated that its motion to dismiss was also its response to the motion for deposit and discharge or asked that the decision on the motion for deposit and discharge be held in abeyance until the subject matter jurisdiction motion was decided. The Schmeling defendants ended up filing ninety-six pages of argument – over twice what they would have been allowed had they simply filed a motion to dismiss.

The court has considered all eight briefs on the subject matter jurisdiction matter. However, because of the length and density of the Schmeling defendants' briefs (for instance, their brief regarding subject matter jurisdiction filed at docket 51 contains eighty-two footnotes, the vast majority of which are citations to cases from around the country), not all of their arguments and citations can be addressed in detail in this decision.

U.S.C. § 1132(e), as the base of this court's jurisdiction.[3]  Reliance asserted that the life insurance policy is part of an MBF employee welfare benefit plan governed by ERISA.

The Schmeling defendants argue that the subject matter jurisdiction issue determines the whole case, as the determination that ERISA applies means that Roberta gets the proceeds.  (*See, e.g.*, Surreply re: Mot. to Deposit and for Discharge (Doc. #48) at 9 ("RSL filed a Rule 22 interpleader and alleged ERISA jurisdiction and aggressively litigates a position under ERISA upon which, if RSL prevails, MBF's client will win and Schmeling will lose.").)  However, they are conflating subject matter jurisdiction and the merits of the case into a discussion of subject matter jurisdiction.

A motion challenging jurisdiction of this court over the subject matter related in the complaint falls under Fed. R. Civ. P. 12(b)(1).  The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) issue.  *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc).  Subject matter jurisdiction may be attacked in two ways.  First, when the face of the complaint may be challenged, the motion is "analyzed as any other motion to dismiss, by assuming for purposes of the motion that allegations in the complaint are true."  *Id.*  Exhibits to a pleading are part of the pleading. Fed. R. Civ. P. 10(c).  And where "'the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed,

---

[3]Notwithstanding the likelihood that interpleader under 28 U.S.C. § 1335 was available to Reliance, as Jill Marie Matula is alleged to be a citizen of New York and the other individual defendants are alleged to be citizens of Wisconsin, *see State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) (stating that the interpleader statute requires only minimal diversity, meaning diversity of citizenship between two or more claimants regardless of whether additional claimants are co-citizens); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 676-77 (7th Cir. 2006) ("For many years, [Congress] has permitted minimal diversity suits under the federal interpleader statute, 28 U.S.C. § 1335."), Reliance did not use § 1335 as a basis for subject matter jurisdiction.  Use of that provision might have obviated the present challenge to subject matter jurisdiction.

must prevail over the averments differing therefrom.'" *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1991) (quoting *Foshee v. Daoust Const. Co.*, 185 F.2d 23, 25 (7th Cir. 1950)).

Second, when "the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946. In this situation, the court is free to weigh the evidence to determine whether jurisdiction has been established. *Id.*

However, when the basis for jurisdiction is the same federal statute that forms the basis of a claim, an important distinction must be made between this second type of motion under Rule 12(b)(1) and one under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Whether the elements of a federal statute are met respecting the merits is separate from whether the court can adjudicate the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *Frey v. EPA*, 270 F.3d 1129, 1132 (7th Cir. 2001). Thus, when the court's jurisdiction and the claim for relief rest on the same federal statute but the cited basis for relief is found incorrect, the district court should not dismiss the case under Rule 12(b)(1), but should proceed as if jurisdiction exists and determine the merits of the claim under Rule 12(b)(6). *Frey*, 270 F.3d at 1132.

ERISA jurisdiction is governed by this standard rule. The Seventh Circuit held in the ERISA context that when both subject matter jurisdiction and the substantive claim for relief are based on the same federal statute, "dismissal for lack of subject matter jurisdiction is proper only when the allegations of the complaint are frivolous." *Health Cost Controls v. Skinner*, 44 F.3d 535, 537 (7th Cir. 1995). Thus, the court should assume that

7

it has jurisdiction and analyze the claim under Rule 12(b)(6) or Fed. R. Civ. P. 56 if warranted. *See id.*; *United Phosphorus, Ltd.*, 322 F.3d at 946.

The difference is important because in the Rule 12(b)(1) context, the court may weigh the evidence and make factual findings regarding jurisdiction based on evidence presented by the parties. *United Phosphorus, Ltd.*, 322 F.3d at 946. However, under Rule 12(b)(6), only the complaint and its exhibits are examined. Documents outside of the complaint and the annexed exhibits are not considered unless the court converts the motion into one for summary judgment. Fed. R. Civ. P. 12(b). Dismissal of an action under Rule 12(b)(6) is warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under Rule 12(b)(6), "the court indulges every reasonable presumption in favor of the complainant." *Frey*, 270 F.3d at 1132.

The Schmeling defendants do not specify the nature of their attack on subject matter jurisdiction; however, they and Reliance have submitted evidence in addition to the documents attached to the complaint. Hence, it appears that the attack is, in part, factual. But, to the extent that additional evidence has been filed, inasmuch as subject matter jurisdiction and the alleged claims between the defendants and Reliance stem from ERISA, the attack should be made under Rule 12(b)(6) rather than Rule 12(b)(1). Thus, the additional evidence will not be considered for subject matter jurisdiction purposes, and the court will not convert the Rule 12(b)(6) motion into one for summary judgment on the

8

merits.[4]  Instead, the court will address any facial challenges to the allegations of the complaint and factual challenges only with regard to the exhibits attached to the complaint.

Although not noted by Reliance in its complaint (but because it did not cite 28 U.S.C. § 1335 as the basis for interpleader), it appears that the interpleader complaint is brought under Fed. R. Civ. P. 22, which provides:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability.  It is not ground for objection to the joinder that the claims of the several claimants . . . do not have a common origin or are not identical but are adverse to and independent of one another.

Fed. R. Civ. P. 22(1).

Rule 22 is a procedural device; it does not convey federal subject matter jurisdiction.  *Commercial Nat'l Bank v. Demos*, 18 F.3d 485, 488 (7th Cir. 1994); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000); *Met. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997).  A party seeking to bring a Rule 22 interpleader case in federal court must establish either federal question or diversity jurisdiction.  *Commercial Nat'l Bank*, 18 F.3d at 488.

---

[4]Further, Reliance's proffered evidence was simply attached to its reply brief, without any authentication, and cannot be considered for that reason as well.  In addition, one of the attachments is a policy numbered VG PG8888.  No one explains how this policy relates to the Agreement or to Eugene's coverage.  It is possible that the Agreement attached to the complaint is the contract between Reliance and MBF and that individual policies also issued as to each participant or insured.  But the first page of this policy contains symbols such as "'" and "#" instead of an owner's or insured's name or other pertinent information.  Thus, it appears that this may be some form policy rather than Eugene's policy.  No affidavit or other evidence supports a finding that the contents of this form or blank policy applied to Eugene's life insurance benefits.  Moreover, counsel for the Schmeling defendants swears in an affidavit that the document attached to Reliance's reply brief differs from a policy given to him by Roberta's attorney which was supposed to be the relevant policy for this case.  (Schmeling Defs.' Br. in Supp. of Jurisdictional Obj'ns. Ex. A ¶¶ IV, V.)  If these policies are resubmitted to the court in the future they must be authenticated and explained.

Subject matter jurisdiction over an interpleader complaint may exist even though the complaint on its face does not establish a federal question, if the stakeholder's right to relief depends on the resolution of a substantial question of federal law. *Id.* For instance, subject matter jurisdiction exists when a coercive action by one of the claimants against the plaintiff would present a substantial question of federal law. *Id.* at 489; *Bell & Beckwith v. United States*, 766 F.2d 910, 913-14 (6th Cir. 1985).

In its complaint, Reliance points to ERISA as the basis of federal question jurisdiction. The Schmeling defendants' challenge to subject matter jurisdiction is sevenfold. The subheadings below each reflect the particular challenge to subject matter jurisdiction rather than the court's resolution of it.

1. None of the defendants can bring an ERISA claim against Reliance as it is not the plan or plan administrator; thus, Reliance cannot be subject to multiple liability and cannot bring an interpleader claim.

According to the Schmeling defendants, Reliance does not qualify for interpleader because it cannot be subject to double or multiple liability, or any liability at all, because none of the defendants can sue it under ERISA. According to the Schmeling defendants, only the MBF plan or MBF can be sued. However, the Schmeling defendants are wrong on this point.

ERISA, at 29 U.S.C. § 1132(a)(1)(B), permits a suit to recover benefits due under an employee welfare benefit plan. "The most appropriate defendant for a beneficiary's § 1132(a)(1)(B) denial of benefits claim is the employee welfare benefit plan itself." *Rivera v. Network Health Plan of Wis., Inc.*, No. 02-C-1055, 2003 WL 22794439, *6 (E.D. Wis. July 11, 2003) (Griesbach, J.); *see Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) ("[I]t is silly not to name the plan as a defendant in an ERISA suit."); *Jass*

10

*v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996). Thus, it is unquestionable that employee welfare benefit plans are suable entities. 29 U.S.C. § 1132(d)(1).

On the other hand, certain cases suggest that the plan is the *only* entity to be sued. For instance, the *Jass* court stated that ERISA permits benefits suits "only against the Plan as an entity," 88 F.3d at 1490, and the *Riordan v. Commonwealth Edison Co.* court reiterated that statement, 128 F.3d 549, 551 (7th Cir. 1997).

However, *Jass* and *Riordan* do not provide the bright-line rule the Schmeling defendants desire. Notwithstanding the *Jass* language quoted above, the Seventh Circuit has not mandated that the plan *alone* can be sued. *Samaritan Health Ctr. v. Simplicity Health Care Plan*, 459 F. Supp. 2d 786, 792 (E.D. Wis. 2006); *Rivera*, 2003 WL 22794439, at *8 n.6. The *Riordan* court declined to dismiss a benefits claim against an employer because the plan documents referred to the employer and the plan interchangeably and the company was the plan's agent for service of process. 128 F.3d at 551; *Samaritan Health Ctr.*, 459 F. Supp. 2d at 792.

Further, the statements in *Jass* and *Riordan* were refined or clarified in *Mein*. The Seventh Circuit noted that the proposition that the plan alone can be sued "is much less firmly established than the defendants would have us believe." 241 F.3d at 584; *Samaritan Health Ctr.*, 459 F. Supp. 2d at 792. The court found that when a plan and employing company are "closely intertwined," the employer may be sued instead of or in addition to the plan. *Mein*, 241 F.3d at 584-85. Mein was permitted to continue suit against both the employer and plan because the summary plan description referred to the two interchangeably, the employer was the administrator of the plan as well as the

11

designated agent for service of legal process, and a plan trustee used employer stationery for correspondence.  241 F.3d at 585; *Samaritan Health Ctr.*, 459 F. Supp. 2d at 792-93.

District Judge Griesbach examined thoroughly the question of who may be sued for ERISA benefits and found that even a health maintenance organization providing group health benefits could be sued under § 1132(a)(1)(B).  *Rivera v. Network Health Plan of Wis., Inc.*, 320 F. Supp. 2d 795, 798 (E.D. Wis. 2004).  Judge Griesbach found *Jass* to be weak support for the proposition that the plan is the only proper defendant, observing that even though the *Jass* court *said* ERISA permitted suits against the plan alone, the court actually *held* that Jass could sue PruCare, the plan administrator, rather than the plan.  *Id.* at 798-99.  He noted that other circuits allow plaintiffs to sue plan administrators for benefits.  *Id.* at 799.  Further, he discussed in detail several district court opinions in which a plaintiff was permitted to sue an administrator or an insurance company, even if not officially named as plan administrator in the plan documents, provided the entity controlled (1) the determination of claims to pay and (2) the actual payment of benefits.  *Id.* at 799-801.  Because it appeared that the HMO in *Rivera* was the party that paid benefits and determined whether benefits would be paid, Judge Griesbach did not dismiss the claim against it, especially as the existence of a plan to sue was unclear.

Similarly, two courts in the Northern District of Illinois have read Seventh Circuit precedent to allow benefits lawsuits against more than just a plan.  In *Madaffari v. Metrocall Cos. Group*, No. 02-C-4201, 2004 WL 1557966, *3 (N.D. Ill. July 6, 2004), District Judge St. Eve read *Mein* to allow suits against the decision-making entity.  She refused to dismiss claims against an insurance company where the insurance policy was the Plan's only asset and the insurer in general decided whether disability benefits would be

terminated and had decided against the plaintiff on her claim for disability benefits. *Id.* at *1, *3-*4. Further, the insurer was responsible for disbursement of benefits. *Id.* at *1. Even though the summary plan description named the employer's director of human resources as plan administrator, the court found that the insurer was the party legally responsible for determining and paying benefits and thereby a proper party for suit. *Id.* at *4-*5.

In *Penrose v. Hartford Life & Accident Insurance Co.*, No. 02-C-2541, 2003 WL 21801214, *3 (N.D. Ill. Aug. 4, 2003), District Judge Lefkow commented that the "*Jass* dictum is no longer good law if it ever was." She ruled that an insurer was a proper defendant in an ERISA benefits lawsuit where the identity of the plan was unclear and the insurer administered the plan, was the final decision-maker regarding benefits, and paid for benefits. *Id.* at *1, *3. Judge Lefkow noted that the Congressional purpose behind § 1132(a)(1)(B) was that a party legally responsible for paying benefits governed by ERISA can be sued to pay for them. *Id.*

Considering these decisions, it is evident that the keys to deciding whether Reliance may be sued for benefits under ERISA are whether Reliance is "closely intertwined" or interchangeable with the Plan and whether it controls benefits determinations and payments. *Samaritan Health Ctr.*, 459 F. Supp. 2d at 793-94.

While the alleged MBF plan might be considered a better defendant for any benefits claim, it appears that Reliance nevertheless could be sued. In view of the complaint and the Agreement, it is clear that Reliance is the party legally responsible for paying life insurance benefits upon the death of MBF employees or their dependents who held life insurance coverage under the Agreement. Although the Agreement does not

13

specify who makes benefits determinations regarding payment, and no actual policy of term insurance or a summary plan description of MBF's benefits plan is attached to the complaint, the Agreement suggests that certain life insurance benefits coverage determinations are made by Reliance. For instance, for coverage in excess of a guaranteed issue amount or when the application is received after the expiration of an initial eligibility period, coverage is effective on the first day of the month following the application, "provided the Insurance Company agrees to insure such person." (Compl. Ex. A ¶ 8.) Applications following the initial eligibility period also require "medical evidence" of insurability (*id.*), suggesting that Reliance's agreement to insure an individual in that case is not perfunctory but based on its review of medical records or testing.

Further, an MBF employee wishing to terminate participation in the life insurance program must notify Reliance, not the MBF plan or its administrator, of that change. (*Id.* ¶ 11.) This provision suggests that as to these life insurance benefits, the responsibilities of Reliance, the plan or its administrator could be intertwined.

Finally, the complaint and its attachments indicate that four of Eugene's children filed claims for the life insurance plan benefits with Reliance, and that Reliance conducted an investigation into who should be paid, thereby suggesting that Reliance is the decision-making authority regarding payment of such benefits.

With due regard for the apparent alleged claims in this case, and the claims at issue in *Rivera*, *Samaritan*, *Madaffari*, and *Penrose*, it appears that Reliance could be sued under § 1132(a)(3) by alleged beneficiaries. Further, as Roberta, the trust, and four of Eugene's children at some point all claimed an interest in the same $10,000, the court

14

finds that Reliance satisfies the requirements of Rule 22(1), inasmuch as it could be subject to multiple § 1132(a)(3) claims.

2.    ERISA does not apply because Eugene's coverage was not part of MBF's plan

The complaint asserts that the life insurance policy covering Eugene is part of an employee welfare benefit plan governed by ERISA.  Facially, the statement is satisfactory to make this an ERISA-based case for the purpose of subject matter jurisdiction.  However, the Schmeling defendants submit that the statement is incorrect because, as a *former* spouse, Eugene was no longer eligible for coverage under the MBF plan.  Their secondary argument is that the MBF life insurance program with Reliance was not an ERISA plan at all.

Plans governed by ERISA include "employee welfare benefit plans," meaning

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of . . . death.

29 U.S.C. § 1002(1).

According to the Schmeling defendants, even assuming the MBF life insurance program is an ERISA plan, when Roberta and Eugene divorced, he ceased to be a participant or beneficiary of the plan and any insurance policy on his life falls outside the ERISA plan.

There are several problems with this argument.  First, there is no evidence suggesting that MBF and Reliance have any relationship outside the Agreement – in other words, there is nothing indicating that MBF and Reliance have any arrangement outside

15

of the Agreement underlying this case. And there is no evidence that Roberta has any individual relationship with Reliance pursuant to which she obtained an insurance policy on Eugene's life, or that she paid premiums other than through payroll deduction at MBF. Therefore, Eugene's policy must fall under the Agreement as there appears to be no other umbrella covering it. Further, one of the parties to the Agreement, i.e., Reliance, admits in its complaint that Eugene's life insurance policy falls under the Agreement and is part of the MBF plan. Moreover, nothing in the documents attached to the complaint (or even in any of the other filings with the court, whether properly presented or not) indicates that MBF disagrees with Reliance's interpretation. Thus, the Schmeling defendants are trying to tell a party to an agreement that that party's interpretation of its own agreement is wrong. As strangers to the Agreement, the Schmeling defendants are not in an authoritative position regarding what the Agreement means and how the parties to the Agreement interpret it.

Second, the terms of the Agreement do not indicate that upon divorce a spouse is suddenly barred from being a dependent. All full-time MBF employees and their "dependents" are eligible for life insurance coverage under the Agreement. (Compl. Ex. A ¶ 6.) "Dependent" includes "the employee's legal spouse" as well as an employee's domestic partner if an affidavit of domestic partnership is on file with MBF. (*Id.*) It is undisputed that Eugene was a dependant under this agreement at the time Roberta obtained the life insurance for him through the MBF plan with Reliance, and nothing in the Agreement indicates that a dependent's coverage ceases upon divorce. Instead, the Agreement provides that insurance coverage terminates on "the date the Insured's Policy terminates" or the end of a period for which premium has been paid. (*Id.* ¶ 11.)

16

The policy covering Eugene was not attached to the complaint, and, as noted before, no copy of that policy has been provided to the court, properly or not. Therefore, no evidence suggests that divorce terminates spousal life insurance. Further, the provision providing insurance for domestic partners suggests that a valid marriage is not always a requirement for coverage. Perhaps former spouses remain covered, too.

Except for the context of interpleader, *Lewis v. Cox Enterprises, Inc.*, No. 94-2792, 1995 WL 321754 (E.D. La. May 24, 1995), is right on point. Lewis was an employee who obtained life insurance coverage for his then-wife through his employer's ERISA plan. Lewis informed his employer when he and his wife divorced, yet the employer continued to deduct premiums from his paycheck, until his ex-wife died two years later. *Id.* at *1. The ERISA plan stated that eligible dependants included the employee's "wife or husband." *Id.* at *3. The insurance company fought payment of benefits and the court denied the insurer's summary judgment motion, which argued that "wife" did not mean "ex-wife." *Id.* at *4. The court found against the insurance company:

> The Court is of the opinion that there is no express language in the Plan that sets out that an ex-wife or ex-husband is not an eligible dependent. There is no express language in the Plan that states that upon divorce, your former spouse ceases to be a member of an eligible class under the Plan. Under the Benefit Plan, ex-spouses are not included in the list of exclusions.
>
> . . . .
>
> [T]he Court is of the opinion that the language of the Benefit Plan is not plainly and clearly articulated as to whether the coverage sought by plaintiff terminated upon his divorce.
>
> . . . .

> If Lewis can prove that it was Cox Cable's interpretation or policy to allow ex-spouses to be covered under "*defined dependent*" for the purposes of continuing life insurance coverage, then he will be entitled to the benefits.

1995 WL 321754, at *3-*4. Here, the parties have not provided a summary plan description outside of the Agreement, so the court assumes that the Agreement sets forth the contours of the plan. And the language of the Agreement, like the plan in *Lewis*, can be interpreted to include ex-spouses. Nothing in the Agreement's language expressly terminates an ex-spouses coverage upon divorce. Further, the district court in *Lewis* still considered the case under ERISA regardless of whether the insurance company argued that the ex-spouse was not covered by the ERISA plan.

The Schmeling defendants' alternative argument – that the MBF life insurance program generated by the Agreement does not constitute an ERISA plan – fails also. The program generated by the Agreement appears to meet the above-quoted definition of an "employee welfare benefit plan." In other words, based on the complaint and the Agreement, the MBF life insurance plan appears to be a program established or maintained by MBF, an employer, to provide its employees and their dependents with benefits upon death, through insurance.

The argument advanced by defendants rests on 29 C.F.R. § 2510.3-1, which includes a "safe harbor" for certain insurance programs, exempting them from ERISA coverage. The regulation clarifies that the term "employee welfare benefit plan"

> shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> > (1) No contributions are made by an employer or employee organization;

18

> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

The Schmeling defendants maintain that under this safe harbor provision the MBF life insurance plan does not qualify as an employee welfare benefits plan under ERISA. On the other hand, Reliance contends that this life insurance program is part of a larger benefits plan of MBF, that the plan must be viewed as a whole, and that MBF has endorsed the life insurance program, meaning that the third element of the safe harbor provision is not met.

The terms of the Agreement indicate that elements one and two are likely met. The insurance premiums are paid from payroll deductions rather than by MBF (Compl. Ex. A ¶ 8), and eligible persons under the Agreement must apply in writing for the insurance, suggesting that the benefits are voluntary. However, no evidence in the record supports a finding that the third element is met. The existence and terms of the Agreement suggest that MBF does more than act as a mere conduit through which Reliance advertizes its insurance to MBF employees. The Agreement indicates that certain insurance is

19

guaranteed for MBF employees or dependants, and that MBF likely secured that benefit for its employees rather than simply acting as an intermediary for Reliance's products. Further the Agreement provides that MBF can "terminate this plan in its entirety," suggesting that the parties to the Agreement consider it a "plan" under MBF's monitoring or control – or at least more than just an arrangement for Reliance to offer its products to MBF employees.[5]

The complaint asserts that the MBF life insurance program under Agreement VG177099 is an ERISA plan. However, the Agreement does not suggest that the insurance program meets all of the safe harbor requirements, and the definition of an employee welfare benefits plan indicates that the court should interpret that definition broadly, erring on the side of inclusiveness, *see* 29 U.S.C. § 1002(1) (including "*any* plan, fund, or program which was heretofore or is hereafter established or maintained"). Therefore, at this point the court must assume that the life insurance benefit does constitute an ERISA plan benefit.

3.    Reliance could not bring this case under § 1132(e) because it is not an ERISA participant, beneficiary, or fiduciary.

Reliance invokes 29 U.S.C. § 1132(e) as the basis for federal question jurisdiction. Section 1132(e) provides that federal district courts have jurisdiction of ERISA civil actions filed "by the Secretary or by a participant, beneficiary, [or] fiduciary." § 1132(e)(1). The Schmeling defendants argue that ERISA is very specific as to who can

_____

[5]The MBF brochure on the life insurance program, which Reliance submitted to suggest endorsement by MBF, was attached to Reliance's brief but never authenticated. Thus, the court cannot use it as a basis for decision.

sue under § 1132(a)(3) or 1132(e)(1), limiting such suits to participants, beneficiaries, and fiduciaries, and that Reliance is none of these.

A "fiduciary" includes one who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" and one who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

The Schmeling defendants contend that Reliance had no discretionary authority with respect to the MBF life insurance program but instead exercised only ministerial functions. However, the documents attached to the complaint do not support that conclusion. Instead, as noted above, the Agreement indicates that Reliance had some power to approve or deny certain insurance policies in excess of a guaranteed amount of insurance or when the application was made after an initial eligibility period expired. The requirement for medical documentation in the latter case indicates that Reliance could review medical information in making its decision. Further, it is undisputed that Reliance controlled the disposition of life insurance plan payments through its insurance, and the complaint and its attachment show that Reliance exercised discretion in that role. As alleged in the complaint and as indicated in the correspondence attached to the complaint, the Schmeling defendants filed their proofs of claim with Reliance, Reliance conducted an investigation before paying out any proceeds, and Reliance (not the plan or its administrator) was the entity which apparently determined whether the proceeds were paid to one or more of the claimants. Thus, the evidence before the court at this time shows that Reliance exercised discretionary authority regarding management or administration

21

of the plan as well as disposition of plan assets, i.e., the amounts available pursuant to insurance.

Moreover, numerous courts have found that subject matter jurisdiction exists under § 1132(e) over interpleader suits brought by insurance companies, acting as fiduciaries, to determine which competing beneficiary is entitled to the proceeds. *Metro. Life Ins. Co. v. Valdepena*, No. SA-05-CA-140XR, 2005 WL 2008468, *3 (W.D. Tex. Aug. 17, 2005) (citing several cases); *see Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 439-40 (2d Cir. 2002) (stating that MetLife, as plan fiduciary, could bring interpleader action under Rule 22 and 29 U.S.C. § 1132(a)(3)(B) and that subject matter jurisdiction existed under 29 U.S.C. § 1132(e)(1)); *Cent. States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 674 n.2 (6th Cir. 2000); *Bayona*, 223 F.3d at 1033 (finding that because Aetna decided claims to life insurance proceeds and the claimant directed her correspondence to Aetna, Aetna acted as a fiduciary and could bring interpleader case); *Marsh*, 119 F.3d at 418 (stating that when an insurance company says it is the claims fiduciary and administers claims for an ERISA plan, and it has authority to grant or deny claims, the company is an ERISA fiduciary); *Metro. Life Ins. Co. v. N. Trust Co.*, No. 94-C-2850, 1996 WL 145974, *4-*7 (N.D. Ill. March 27, 1996) (finding that three insurers were fiduciaries for purposes of an ERISA interpleader action).[6]

---

[6]In *Wallace v. Reliance Standard Life Insurance Co.*, 318 F.3d 723, 724 (7th Cir. 2003), the court questioned whether an insurance company acts as a fiduciary when implementing a contract of insurance. But *Wallace* substantially differed from the facts of this case. There, the plaintiff, a participant or beneficiary seeking disability benefits, argued that as a fiduciary the insurer was required to obtain additional evidence supporting his claim. The case did not discuss specifics of the insurance contract or plan at issue. Moreover, in *Wallace* the insurer was in a position opposite the claimant, and one of the court's points was that a true fiduciary would act in a participant's favor. Here, Reliance is acting in the beneficiaries' favor – it wants *someone* to get the life insurance proceeds. More importantly, here, at the motion to dismiss stage, for the above reasons, it appears that Reliance could meet the definition of a fiduciary.

Thus, this court considers Reliance a fiduciary able to bring an interpleader lawsuit to determine which of the competing purported beneficiaries is entitled to the proceeds.

4 & 5. Reliance failed to exhaust ERISA remedies before filing the case; its wrongdoing in failing to comply with claims and appeals procedures means it is not an innocent stakeholder.

The Schmeling defendants contend that before any ERISA case is filed, including an interpleader complaint, administrative remedies must be exhausted. They contend that by filing the interpleader complaint rather than exhausting (by adjudicating) the claims before it, Reliance has prevented the creation of an administrative factual record for this court. Further, the Schmeling defendants argue that Congress intended that fiduciaries not be allowed to obtain declaratory relief regarding disbursement of claims.

This court does not see how Reliance could be required to do more than it did. Reliance was not a claimant who had to exhaust remedies, but rather the payor of benefits. And it determined in this case that benefits would be paid to someone. Thus, it could not *deny* any claim. Instead, faced with conflicting claims to the life insurance proceeds, Reliance, acting alone, could not determine to whom the proceeds should be awarded and shielded itself from further claims. Interpleader was the natural next step. Reliance could not have denied any particular claimant's claim and given the money to another claimant without opening itself to the possibility of multiple payouts in the event it was wrong. This is a common interpleader scenario. Reliance did nothing wrong in invoking it.

None of the cases the court has read regarding insurance company interpleader cases in the ERISA plan context have noted any requirement about

23

exhaustion. For instance, in *Metropolitan Life Insurance Co. v. Valdepena*, the district court noted that the insurance company did exactly what Reliance did in this case: faced with conflicting claims to life insurance proceeds, it sent a letter to the two claimants notifying them of its intent to file an interpleader action should the parties be unable to work out a compromise. 2005 WL 2008468, at *1. When the parties could not settle the matter themselves, the insurer filed its interpleader lawsuit. *Id.* The court did not note any problems with this procedure in regard to exhaustion of remedies.

The Schmeling defendants also argue that Reliance is committing wrongdoing because it is really suing on behalf of MBF. The Schmeling defendants contend that the insurer's business ties to employers result in a worry on Reliance's part about a loss of business if employers or plan sponsors are sued. (Surreply on Mot. to Deposit and for Discharge (Doc. #48) at 8-10.) The argument is pure speculation. No evidence exists in the record that Reliance sues on MBF's behalf. As discussed in other sections of this decision, Reliance, not MBF, makes determinations regarding coverage or benefits payments and holds the life insurance proceeds. Thus, it is in a fiduciary position regarding the plan and is an innocent stakeholder.

6.      Reliance has no cause of action under § 502(a)(3).

According to the Schmeling defendants, Reliance has no cause of action under ERISA § 502(a)(3), i.e., 29 U.S.C. § 1132(a)(3), and no statutory basis for bringing this action. It points to cases indicating that a fiduciary cannot bring a declaratory judgment lawsuit under § 502(a)(3), e.g., *Painter v. Golden Rule Ins. Co.*, 121 F.3d 436 (8th Cir. 1997); *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987).

24

Reliance agrees that it has no cause of action under § 502(a)(3). However, it clarifies that it has no *independent* claim, but rather relies on the claims of the various defendants:

> [The Schmeling defendants] correctly state[] that Reliance Standard has not asserted a claim under Section 502(a)(3) of ERISA. As noted above, Reliance Standard has no claim to the benefits. However, this does not mean that the policy is not governed by ERISA and that Reliance Standard has not been presented with competing claims which are subject to the jurisdiction of this Court in an action for Interpleader.

(Reply re: Mot. for Deposit and Discharge at 14.) In other words, Reliance relies on the § 502(a)(3) claims that Roberta and other purported beneficiaries have advanced regarding the insurance proceeds at issue. In the court's view, Roberta's and the other purported beneficiaries' claims require resolution of a substantial question of federal law – who the correct beneficiary of an ERISA plan life insurance policy is. That is sufficient for interpleader. Rule 22 does not require the interpleading plaintiff to have a claim against any of the parties defendant. It requires only that the potential claimants have claims against the interpleading plaintiff. As discussed below, interpleader is not the same as a declaratory judgment action.

7. Interpleader is not authorized under § 502(a)(3) and is not available in equity.

Under 29 U.S.C. § 1132(a)(3)(B), a civil action by a fiduciary must be brought to obtain equitable, not compensatory, relief. *Bayona*, 223 F.3d at 1033. Notwithstanding the Schmeling defendants' argument to the contrary, interpleader is an equitable action. In rejecting a similar challenge, the Sixth Circuit found that "interpleader is fundamentally equitable in nature." *Marsh*, 119 F.3d at 418. The Ninth Circuit found it to be "generally recognized that interpleader developed in equity and is governed by equitable principles.

25

Interpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation." *Bayona*, 223 F.3d at 1033-34 (citations and internal quotation marks omitted). Another judge in this district agrees with the outcome of these Ninth and Sixth Circuit cases, as does one in the Northern District of Illinois. *See Aetna Life Ins. Co. v. Hager*, 930 F. Supp. 343, 345 (E.D. Wis. 1996) (Goodstein, M.J.); *N. Trust Co.*, 1996 WL 145974, at *4-*5.

The Seventh Circuit, in an en banc decision, noted that it had subject matter jurisdiction under § 1132(e) over an interpleader action brought by a pension fund to determine who should receive death benefits, although it is unclear whether subject matter jurisdiction was actually challenged in the case. *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, (7th Cir. 1990) (en banc). Also, other cases have referenced interpleader in the ERISA benefits payout context, indicating that those courts saw no problem regarding an equitable remedy. *See, e.g., Sun Life Assurance Co. of Canada v. Thomas*, 735 F. Supp. 730, 732 (W.D. Mich. 1990).

The Schmeling defendants liken interpleader to declaratory judgment actions. They cite holdings that insurance companies cannot maintain ERISA suits for declaratory judgment regarding liability under a policy because such suits do not seek equitable relief. However, as noted by the Sixth Circuit in *Marsh* and by Magistrate Judge Aaron E. Goodstein in *Hager*, declaratory judgment actions are distinguishable from interpleader; the latter is fundamentally equitable. *Marsh*, 119 F.3d at 418; *Hager*, 930 F. Supp. at 345.

For all of the above reasons, the Schmeling defendants' challenge to subject matter jurisdiction is denied.

## STATUS OF THE TRUST

Twice the clerk of the Western District denied the Schmeling defendants' request for entry of default against the trust.  In the second denial, the clerk stated that "[d]efendants have simply attached a letter from the executor of the trust to plaintiff's counsel to their letter request for default."  (Amended Entry of Default (Doc. #12).)

The trust has not appeared in this case for over two years.  Thus, it is subject to be dismissed for failure to prosecute.

## POTENTIAL DROPPING OF CLAIMS BY SCHMELING DEFENDANTS

Toward the end of their briefing, the Schmeling defendants made an interesting admission.  In their response to Roberta's brief on subject matter jurisdiction, the Schmeling defendants stated:  "Roberta states, '[I]f Roberta Matula is not the beneficiary, no one is.' (b6).  Schmeling agrees.  The $10,000, due and payable, is not due and payable under the policies."  (Resp. to Br. of Roberta Matula re Subject Matter Juris. at 14.)  Then again, in their reply to Reliance's subject matter jurisdiction response brief, the Schmeling defendants wrote:  "None of the defendants have a claim under the policies to the $10,000 because the policies do not cover former spouses.  None of the defendants have a claim under ERISA to the $10,000."  (Reply of Schmeling to Resp. of Reliance re Juris. at 9.)

If the Schmeling defendants have dropped their claims to the $10,000 that Reliance wishes to pay out, then this case is now likely moot.  They should notify all parties and the court immediately if this is their present position so this case can be wrapped up.

27

DEPOSIT AND DISCHARGE

Federal Rule of Civil Procedure 67 provides that in any action in which any part of the relief sought is a sum of money or the disposition of such sum, "a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum. . . . The fund shall be deposited in an interest-bearing account or invested in an interest-bearing instrument approved by the court."

Roberta has agreed to the deposit of the life insurance proceeds with the clerk of court and to the discharge of Reliance. Subject matter jurisdiction exists over this case, and that was the only basis for the Schmeling defendants' objection to the deposit of the funds with the clerk of court and the discharge of Reliance. And to date none of the parties has presented the court with any alternate arrangement for the deposit of the money with a bank or other agent. Thus, Reliance's motion for deposit will be granted and the life insurance proceeds are to be deposited with the clerk of this court.

However, a question remains as to what amount should be deposited. In Reliance's motion it indicated that it was willing to deposit the full $10,000, with no reduction for its costs or fees, if it could do so at that time. When it filed its reply brief on the motion for deposit and discharge, Reliance indicated that because it had to expend additional time and money responding to the Schmeling defendants' arguments, it would seek payment of its costs and fees out of the $10,000. (Reply re Mot. to Deposit and for Discharge at 2.) The court has not been presented with any sum regarding what those costs and fees are. It is possible that they substantially reduce the $10,000.

28

Further, Reliance's motion indicated it would deposit the $10,000 "together with any applicable interest." (Mot. to Deposit and for Discharge at 1.) It is unclear to the court what amount of interest, if any, should be deposited with the $10,000.

"Discharge of a disinterested stakeholder is generally granted once the stakeholder has deposited all funds owed to the claimants into the registry of the court." *Life Ins. Co. of N. Am. v. Thorngren*, No. CV-04-464-S-BLW, 2005 WL 2387596, *2 (D. Idaho Sept. 27, 2005). Where a dispute arises over the correct amount of the deposit, the court should deny a discharge. *Id.*

The court's decision today gives Reliance a choice. It can deposit $10,000 and be discharged from the case promptly. Alternatively, request payment of its attorneys' fees and costs from the $10,000 and then depositing the balance. The latter scenario would require an affidavit supporting the sum that Reliance seeks and a short memo providing the legal basis for such an award. The other parties would then have time to respond to that request.

In addition, Reliance should discuss in its memo what amount of interest, if any, should be added to the deposit with the clerk. If the amount of the deposit and discharge can be agreed upon by the parties, the discharge of Reliance will follow quickly.

CONCLUSION

For the above-stated reasons,

IT IS ORDERED that the Schmeling defendants' implied motion to dismiss for lack of subject matter jurisdiction is denied.

IT IS FURTHER ORDERED that Reliance's motion for deposit and discharge is granted.

IT IS FURTHER ORDERED that on or before April 25, 2007, Reliance shall deposit $10,000 with the clerk of this court or else move this court for an award of its attorneys' fees and costs of this action, as well as approval of the deposit, including such interest as may be payable.

IT IS FURTHER ORDERED that any objection to the requested fee, costs and net deposit proposed, shall be filed on or before May 9, 2007.

IT IS FURTHER ORDERED that all claims of the Eugene J. Matula Living Trust in the subject funds, are extinguished, for failure to prosecute unless by April 20, 2007, said trust appears, asserts a claim and shows good cause why it failed to file a timely responsive pleading.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge